**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| AMIR MIRESKANDARI, | § | |
| *Plaintiff* | § | |
| | § | |
| | § | Case No. 4:26-cv-01562 |
| | § | |
| KEVAN CASEY and | § | |
| TABITHA MARIE CASEY as | § | |
| administrator for The ESTATE | § | |
| OF KEVAN CASEY | § | JURY TRIAL REQUESTED |
| *Defendant* | § | |
| | § | |

**PLAINTIFF'S OBJECTION AND RESPONSE TO DEFENDANT'S MOTION TO**
**DISMISS AND PLAINTIFF'S MOTION TO STRIKE**

NOW COMES Plaintiff Amir Mireskandari, and files this Provisional Response to Defendant's Motion to Dismiss and would respectfully show the Court as follows:

First, Plaintiff objects to the relief requested because the Defendants did not follow the rules in their motion to dismiss and did not meaningfully confer.

Defendants are generally correct about the legal standard, but miss some key points with respect to 1983 and Rule 12. Also, Defendants mischaracterize the facts pled in the complaint and do not bother to address the numerous specific factual allegations, as if ignoring them in their motion makes them not part of the complaint.

Importantly, Defendant tries to recast a bizarre scene where a party and his lawyer, completely unsuspecting, find themselves being awkwardly and publicly detained in a Courtroom as they were showing up for a hearing, and then put in some sort of makeshift detention cell in the middle of the courtroom on full public display. The situation was objectively unusual and

humiliating.  They were literally forced to move to the middle of the courtroom and sit in two "timeout" chairs between armed guards.  It was truly weird and this Court should not buy into this 'routine security' thing.

Second, Motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)(quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).  When faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). We must also draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief -- including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier*, 503 F.3d at 401 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)).

This case is well-pled and any reasonable person can read the facts and know what happened and why Plaintiff is suing.  The February 27, 2024 hearing was strange and unusual. A reasonable person would draw inferences based on motive and opportunity as to who coordinated the arrest.  This is not a whodunnit.  It is clear Casey was behind the arrests because he was behind

everything else leading up to, during, and through the arrest.  As also pled about the pump-and-dumps, Casey is the quarterback, the ringleader.[1]

Without discovery, it's not clear exactly what words Casey uttered.  Plaintiff is not able to quote anyone at this point.  But that is not the standard for a 12(b) motion.  It's not even the standard for summary judgment, or to uphold a verdict.  A reasonable jury could hear the pled facts and reasonably infer Casey instructed the arrest.  However, discovery will reveal much more than what is pled.   This is why 12(b) motions are disfavored and rarely granted.   Law students are first introduced to notice pleading with *Conley v. Gibson:*

> Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.

355 U.S. 41, 47-48, 78 S. Ct. 99, 103 (1957).  Subsequent cases require more than a bare recitation of elements, but the Supreme Court has never tried to rewrite the rules entirely, confirming in *Swierkiewicz v. Sorema N.A*:

> Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. See *Conley, supra*, at 48 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits").

.534 U.S. 506, 514, 122 S. Ct. 992, 998-99 (2002)(internal citations omitted.)

Here it is both pled *and* plausible that Casey took additional coordination efforts with law enforcement to make an arrest.  It is more than plausible; Plaintiff intends to win on that issue.

---

[1] Plaintiff specifically cites to *SEC v. Casey* 4:24-cv-02971 in the first allegation in part IV. FACTUAL BACKGROUND of his Complaint.

Depending on how discovery goes, because Casey is alleged to be deceased, Plaintiff may have to prove to the jury that it rained Monday night because he went outside Tuesday morning and it was wet.  But Plaintiff has the right to inferences from evidence if needed.

Even without direct communications between Casey and law enforcement, the act of supplying false information to intentionally cause an arrest gives rise to 1983 liability under the plain, black-and-white language of the 1983 statute.  Casey used law enforcement, the "law", as avatars and instruments to deprive other citizens of their Constitutional rights.  *See* 42 U.S. Code § 1983.

Cases require that the *citizen* be a "willful participant" or "acted in concert" in order to be liable along with state actors.  For Rule 12, this can be an "extra pair of hands." *Boquet v. Belanger*, No. 14-2228, 2015 U.S. Dist. LEXIS 48822, at *12 (E.D. La. 2015).    It is therefore absurd to propose that filing false reports or affidavits to intentionally cause an arrest is somehow not willful participation.  Casey caused the whole thing.  Casey was clearly a willful participant when appointed himself prosecutor.    The logic of 1983 cases and its progeny was to make sure the *citizen* was truly a wrongdoer before becoming liable, and that the *citizen* did not get swept up in a 1983 case when it is really the state actor.  But there is zero authority that holds deceiving, or tricking, or manipulating law enforcement to act is somehow shielded under 1983.

Because "The Fifth Circuit has recognized that a private party may be liable as a state actor for filing a complaint if the actual state actor who harmed the plaintiff: (1) "acted in accordance with a 'preconceived plan' to take the action "merely because [the action] was designated ... by the private party[;]" and (2) the state actor did so "without independent investigation." *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1078-79 (5th Cir. 1985)."[2]  Here, it is clear

---

[2] Quoted from *Michael v. Boutwell*, 138 F. Supp. 3d 761, 773 (N.D. Miss. 2015)

from the pleading that the state actors were acting in accordance with Casey's preconceived plan and without investigation. The arrest was because of Casey's affidavit, Casey's instructions, or both. Regardless, there could not have been any independent investigation by officers because the grounds for alleging contempt were based on false statements. The officers would not have independently come up with the same falsities created by Casey. That is a bridge way too far for logic to reach.

The action by the police constitutes an "abdication of state authority" to a private party that is sufficient to cause the private party's acts to become state action. *See Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*, 673 F.2d 771, 772 (5th Cir. 1982). Here, Plaintiff's pleadings show a clear abdication of state authority. The officers had no other reason whatsoever to arrest Plaintiff but for Defendant playing prosecutor and police with its falsified affidavits. The state simply let Casey allege and prosecute crimes and just made corresponding arrests pursuant to Casey's wishes without any other investigation or use of judgment.

Even more, a private citizen may be deemed a state actor if they perform a function that is traditionally reserved for the state under the public function test. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999). Here, Defendant literally acted as both a prosecutor and law enforcement officer presenting a probable cause affidavit.[3] Defendant specifically sought criminal contempt and quite literally both alleged and tried to prosecute a (manufactured) crime. Defendant should not be able to seek out police and prosecutorial powers, practically pinning a badge on himself, then hide behind the private citizen cloak.

The "false affidavits" allegation is repeatedly tied to what they falsely stated (authorship/knowledge of the brief), who supplied/ratified them (Casey), when (Aug. 9, 2023), and how they were used (to trigger the arrest).

As described in more detail, Plaintiff pled specific, peculiarized facts, each of which creates inferences to which Plaintiff is entitled.  Plaintiff is also presumed to be right about the facts.  First, Plaintiff devotes the first part of his factual background to specifically describing the facts establishing motive, including the threat to Defendant's way-of-life posed by Mireskandari's existence as an adverse litigation party with knowledge of Defendant's pump and dumps and the knowledge Nichols has representing adverse parties to Casey with access to Luxeyard files and public information showing the pump and dump activities.[4]    The facts also establish the opportunity within litigation for retaliation, fear, and silence.[5]

   a.  **Motive (Complaint ¶¶7-14, 32, 33, 48, 66)**:

Casey despised Mireskandari and Nichols because Mireskandari fought him in numerous court battles following the 2012 pump and dump of Luxeyard.  Nichols represents Luxeyard, Mireskandari, and other parties against Casey.  They both know about Casey's pump and dump history, which is relevant background in all these lawsuits.  Casey feared SEC taking action, which it did, so Casey had motive to silence anyone who raised issues about his dealings in publicly traded companies.

   b.  **Means (Complaint ¶70, 14-26, 29, 30, 33, 39, 41, 44, 45)**:

Casey uses the legal system to coerce fear, silence, and revenge.  Case even obtains a bizarre and illegal injunction purporting to prevent Mireskandari or anyone who is connected to

---

[4] IV. Factual Background *generally*.  The facts differ slightly between Nichols & Mireskandari given the different perspectives of each Plaintiff.  This response is filed both in 4:26-cv-01562 TXSD and 4:26-cv-01105 TXSD as the same Rule 12 motion is pending in both matters.

[5] *Id*.

him from *criticizing* Casey, which, *according to Casey* and his lawyers, supersedes legal process, traditional immunities, Constitutional rights, and contains no exceptions in law or in in the injunction itself.  This is a rather unique opportunity to quite literally police your party opponent.

**c.  Opportunity (Complaint ¶¶14, 39, 41, 66, 70, 71)**:

Casey gets a bizarre and illegal injunction.  He then manufactures a false case of criminal contempt against Mireskandari and Nichols.  To really put the screws to his victims, Casey works directly with law enforcement to take the "prosecution" up a notch with a grand arrest and public humiliation of his party opponents.   The tool is becoming so effective, that Casey even files a third (or maybe 4th at this point) show-cause application when the SEC brought their suit against him.

**d. More specifics**:

Plaintiff gets into the who, what, and when of the specific deprivations of his rights:

- In February 2022, Plaintiff represented Alidad Mireskandari in the Jinsun Case (Harris County Cause No. 1181704), a declaratory judgment action challenging Jinsun, LLC (a single-member entity controlled by Casey) over a settlement tied to Casey's 2012 LuxeYard pump-and-dump.

- The Jinsun pleadings and the July 24, 2023 appellee brief in the 14th Court of Appeals detailed Casey's historical and ongoing involvement in pump-and-dump schemes (including RTSL and WLGS), citing publicly available sources and prior court rulings. (¶¶12-14)

- On August 9, 2023, Casey caused his attorneys to file, in the separate Dallas County proceeding (Casey v. Mireskandari, the "Dallas Case"), an application for show-cause order alleging contempt of a prior injunction.

- This application was supported by false affidavits. Those affidavits falsely attributed sole authorship and knowledge of the Jinsun brief's contents to Nichols, ignoring that the brief was filed on behalf of a client and was grounded in adjudicated facts in public records. Casey, as principal, supplied or ratified the false information, fully aware of its falsity. (¶14)

- The show-cause application resulted in a contempt hearing scheduled for February 27, 2024, before Judge Martin Hoffman in Dallas. Nichols attended to defend against the baseless allegations. Upon arrival, Nichols and Amir Mireskandari were immediately seized, arrested, and detained by court security — without Miranda warnings or any advisement of rights. They were objectively and subjectively not free to leave. (¶¶15)

- Nichols (and his client Amir Mireskandari) were seized and arrested by court security immediately upon entering the courtroom — before the case was even called, before any contempt finding, before any instruction from the judge, and before any hearing on the merits occurred. (¶15, ¶26)

- Casey arranged for the arrest and additional security to be present that day; instructed state actors (bailiffs) to arrest Plaintiff; reached a pre-arranged agreement with law enforcement that deviated from normal court security procedure; supplied the false affidavits directly to bailiffs and court personnel to trigger the arrest; and communicated false statements to clerks and court administration.

- Deputies seized Plaintiff immediately upon entry, prior to the case being called, prior to any contempt finding, and prior to any instruction from the judge. The bailiffs acted on Casey's pre-arranged instructions and the false affidavits, not on any judicial order or warrant. (¶¶ 14–25)

- This was not a spontaneous judicial order; it was the result of a pre-arranged agreement between Casey (and his agents) and law enforcement / court personnel. *Id*.

- Casey arranged for additional armed bailiffs / security to be present that day specifically to seize and detain Plaintiff and his client upon arrival. *Id.*

- Casey instructed the state actors (bailiffs) to arrest Plaintiff. *Id.*

- Casey supplied the false affidavits directly to bailiffs and court personnel to trigger the arrest, and communicated false statements to clerks and court administration. (¶21)

- The arrangement deviated from normal court security procedure and was described in the Complaint as "atypical" and "pre-arranged." (¶16, ¶20)

- Casey's agents (including Brandon Fuqua) testified under Casey's direction and control; one was visibly coached on the stand to alter his response. (¶¶ 26–30)

- Amir Mireskandari was acquitted of contempt; the court announced intent to impose 30 days' jail on Nichols (proceedings later stayed). Casey's agents continued pressing baseless show-cause applications even after the SEC's August 9, 2024 complaint vindicated the statements in the Jinsun brief. On September 9,

2024, Casey's agents reported his "death" to the Dallas court without supporting documentation. (¶¶31)

- The Complaint expressly pleads that causing the public courtroom arrest of opposing counsel by filing false affidavits and instructing bailiffs to carry it out "is almost unheard of" and "extremely brazen." It created a public spectacle of embarrassment and intimidation. (¶89–93)

The false affidavits are by themselves enough to establish liability. But the evidence suggests even more, that there were subsequent conversations between Casey and law enforcement to set up the arrests. This is evidence by what actually happened on February 27 and specifically pled: the additional officers and the pre-hearing apprehension. A reasonable juror could infer that those communications had been made, and were made by Casey. However, Plaintiff was obviously not included in these conversations. That is why we have discovery and why we use notice pleading in Federal Courts. *See generally Swierkiewicz.*

There are more than enough facts to make the causes of action "plausible" especially assuming Plaintiff's pled facts are true. These facts are objectively particularized including exact dates, locations, sequences of events, the "who", the "what", and the "why." These facts are unusual and anything but "formulaic." There is clear motive and opportunity.

The fact that Plaintiff does recite some conclusions and elements is for road mapping and to guide the reader through the conclusions supported by the facts. The fact that a plaintiff does plead some conclusions and elements does not negate the facts actually pled, otherwise it would be difficult to tie the facts pled to the causes of action of the case.

Plaintiffs remaining causes of actions are likewise well pled. The facts are clear and sufficient in detail. The reason for numerous claims is not "shotgun" pleading but rather egregious behavior by Defendant.

**MOTION TO STRIKE DEFENDANT'S MOTION TO DISMISS**

Defendant's Motion to Dismiss fails to comply with the Court's procedures requiring a good faith conference. Rule 7, Part C (1) expressly provide that "Parties are expected to make a good faith effort to confer about the disposition of all pretrial motions. All pretrial motions must contain a certificate of conference." Although, Defendant's Counsel included a Certificate of Conference, the certificate does not demonstrate any meaningful conferral.

Further, Court Rule 7, Part C (3) provides that "The Court will not consider the conference requirement to be satisfied by an unsuccessful attempt to reach opposing counsel occurring less than two full business days before a motion is filed."

On the last possible second, the very day of the motion deadline, opposing counsel sent an email to confer.   I asked Opposing Counsel what were the problems with the Complaint and he stated he was unsure. I called Counsel in good faith. I told him that if he could certify his issues were all contained in his email that as a gesture I agreed to replead to avoid this motion entirely. Opposing counsel said not everything was in the email but would be in his motion. I asked him to send me the motion so I could consider his issues. Opposing Counsel stated he was unaware of this Court's rule regarding a certificate of conference and was going to file his motion anyway despite the lack of a real conference. Even though the motion is a boilerplate motion to dismiss that just ignores and misstates the facts of the complaint, I was willing to avoid a dispute by trying

to revise Plaintiff's complaint. Despite this, Defendant's attorney just said they were going to file it anyway and force us to respond and defend this motion. And that's what they did.

The Certificate does not satisfy the Court's requirement. Defendant failed to meaningfully confer as required by the Court's procedures, Plaintiff respectfully requests that the Court strike, or alternatively deny, Defendant's Motion to Dismiss.

WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully requests that the Court strike or in the alternative deny, Defendant's Motion to Dismiss in its entirety and grant Plaintiff such other further relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

LLOYD E. KELLEY

*/s/ Lloyd E. Kelley*
Lloyd E. Kelley
State Bar No. 11203180
2726 Bissonnet Ste 240 PMB 12
Houston, Texas 77005
Telephone: 281-492-7766
Telecopier: 281-652-5973
***ATTORNEY FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

I certify that a copy of **PLAINTIFF'S OBJECTION AND RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE** was filed electronically via the CM/ECF system and served electronically to counsel of record on May 26, 2026.

*/s/ Lloyd E. Kelley*
Lloyd E. Kelley